**Elizabeth DUSTIN, Administratrix of the Estate of Robert E. Dustin**

v.

**CRUISE CRAFT, INC.**

**No. C78–361–L.**

United States District Court,
D. New Hampshire.

March 31, 1980.

---

Charles J. Dunn, Wadleigh, Starr, Peters, Dunn & Kohls, Manchester, N. H., for plaintiff.

Richard E. Galway, Devine, Millimet, Stahl & Branch Professional Ass'n, Manchester, N. H., for defendant.

## ORDER ON PLAINTIFF'S MOTION FOR REHEARING

LOUGHLIN, District Judge.

Pursuant to plaintiff's motion for rehearing on this Court's order of January 17, 1980, which granted defendant's motion to

dismiss for lack of in personam jurisdiction, the pleadings and judgment have been reviewed. After careful reconsideration of all the facts in the light most favorable to the plaintiff, and of all applicable law, the Court is persuaded to accept plaintiff's contention that it can properly exercise in personam jurisdiction over the defendant corporation.

■ As noted in the earlier opinion, personal jurisdiction in this diversity action must be based on New Hampshire's long-arm statute, RSA 300:11 and 14. This statute permits a New Hampshire court to exercise personal jurisdiction over a foreign corporation in the circumstance where it has committed a tort in New Hampshire.

Plaintiff alleges that the tort, the wrongful death of Robert Dustin, occurred at the time and place of his drowning, which allegedly occurred when the Cruise Craft vessel in which he was riding capsized. By a proposed amendment to the complaint, plaintiff further alleges that the capsizing and drowning occurred in New Hampshire waters, and offers facts purportedly establishing that fact. Defendant, in its turn offers the equally compelling fact that the capsized boat and the sole body recovered were found in Maine territorial waters to controvert plaintiff's claim regarding the site of the tort.

The jurisdictional issue presented here is similar to that raised in the case of *Block Industries v. DHJ Industries*, 495 F.2d 256 (8th Cir., 1974). The issue in that case was whether the third-party defendant's motion to dismiss should be granted because the third-party plaintiff could not attain in personam jurisdiction, which plaintiff attempted to do by using a long-arm statute basing jurisdiction solely, as here, on an allegation that the tort had occurred in the forum state.

■ The 8th Circuit Court stated the requisite burden to be on the plaintiff to "state sufficient facts in the complaint to support a reasonable inference that defendant can be subjected to jurisdiction within the state". *Block Industries, supra* at 259.

Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving those facts. *Block Industries, supra,* citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The Court goes on to state that, although a plaintiff seeking to predicate long-arm jurisdiction on the accrual of a tort action within the forum state need not make a full showing on the merits that defendant committed a tort, a prima facie showing is required to defeat a motion to dismiss *for want of jurisdiction.* The prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits presented with and in opposition to the motions, *Block Industries, supra* at 260.

After reviewing all of the exhibits and affidavits that were submitted at the hearing, this Court is left to draw the distressing conclusion that it is impossible to ascertain at this time exactly where the tort occurred. Neither party can provide sufficient evidence to support a finding that the capsizing occurred at any particular spot, and the defendant admits that "it is unknown where the boat actually capsized". Defendant's Objection to Motion for Rehearing at Page 2. From the testimony and exhibits regarding the events of October 23 and 24, 1976, one might justifiably conclude that the boat as likely capsized in New Hampshire territorial waters as in Maine territorial waters. The one fact that is clear and apparently uncontroverted is that the boat capsized and the drowning occurred either in Maine or New Hampshire territorial waters.

■ Using the standard of proof articulated in *Block Industries, supra,* the plaintiff need be required to present only a prima facie showing of where the tort occurred. Plaintiff is not required to prove that the capsizing occurred in New Hampshire territorial waters by a preponderance of the evidence; its burden of proof is not that heavy. Plaintiff is required only to present evidence sufficient on its face to establish the location of the capsizing, which it has done. The defendant's contradictory evidence—that the boat and another

passenger's body were found in Maine waters—is not found to be sufficient to overcome or disprove plaintiff's claim. It is the law of this state that plaintiff's pleadings and all reasonable inferences that can be drawn from them are to be taken as true and construed most favorably to it in determining the issue of jurisdiction under a long-arm statute, *Leeper v. Leeper*, 114 N.H. 294 at 297, 319 A.2d 626 (1974). *Engineering Assoc. v. B&L Liquidating Corp.*, 115 N.H. 508 at 511, 345 A.2d 900 (1975).

■ It is the objective of New Hampshire's long-arm statute, RSA 300:14, "to allow the exercise of jurisdiction over foreign corporations to the full extent of the constitutional limit". *Engineering Assoc. v. B&L Liquidating Corp.*, supra at 511, 345 A.2d at 902; *Roy v. Transairco*, 112 N.H. 171 at 173, 291 A.2d 605 (1972); *Leeper v. Leeper, supra* 114 N.H. at 296, 319 A.2d 626. To be within the constitutional limit, jurisdiction must be reasonable from the point of view of New Hampshire's interest in the litigation, and it must be consistent with the principles of fair play and substantial justice. *Engineering Assoc. v. B&L Liquidating Corp., supra* ; *International Shoe Co. v. Washington*, 326 U.S. 310 at 316, 66 S.Ct. 154 at 158, 90 L.Ed. 95 (1945). Thus, this Court must support its finding of jurisdiction with additional considerations regarding the fairness to the foreign corporation, to the plaintiff, and to the state of New Hampshire and its interests in having the matter litigated within the state.

The legislative policy of New Hampshire's long-arm statutes has been stated to be in the interest of New Hampshire to "protect its residents in their dealings with nonresidents by insuring to them a local forum to seek redress for their injuries", *Roy v. Transairco, supra* 112 N.H. at 178, 291 A.2d at 609. This requires considerations relating to the plaintiff (a New Hampshire resident whose estate will be probated in New Hampshire); the applicable law (New Hampshire's); the availability of witnesses and evidence (much of which is located in New Hampshire; two known witnesses are in Maine; a defendant from

Florida would be no less inconvenienced by a trial held in Maine than it would be in New Hampshire); and the economy and efficiency of suit in New Hampshire.

Bearing all these factors in mind and considering carefully the convenience of both parties, it is this Court's opinion that it is reasonable and consistent with constitutional requirements of due process to assert personal jurisdiction over the defendant corporation.

Leave is hereby granted under Rule 15(a) of the Federal Rules of Civil Procedure to plaintiff to amend its complaint by adding to paragraph seven the words "within the territorial waters of the State of New Hampshire" after striking the period following the word "drowned," as requested in its motion of January 25, 1980.

■ The issues raised in defendant's Motion to Dismiss of November 16, 1979 regarding the tolling of the New Hampshire statute of limitations now must be ruled on as well. This motion is based on the following facts: Plaintiff's complaint was sworn to and mailed on October 23, 1978 and received by the Court on October 24, 1978. While both plaintiff and defendant place a great importance on the preferable choice between these two dates, for purposes of deciding this motion, it is not necessary to resolve that issue. Even assuming October 24, 1978, the date least favorable to the plaintiff, to be the date which would toll the statute of limitations, it is the opinion of this Court that suit was commenced within the two-year limitation.

■ The statute setting the applicable limitation is RSA 556:11, which states in part that an action "may be brought for such cause at any time within two years after the death of the deceased party". The first and determinative inquiry to be made, then, is when the death of the deceased Mr. Dustin occurred. Available evidence and testimony give no indication of the exact time of death. He was last seen alive and in no apparent danger or distress during the afternoon of October 23, 1976. The earliest indication that Mr. Dustin may

have drowned was discovered the morning of October 24, 1976 when the boat and body were found. The law in New Hampshire, and the generally accepted doctrine in this country, is that there is a presumption "that a party continues to live until some evidence is offered to rebut it". *Smith v. Knowlton,* 11 N.H. 191 at 195 (1840). *See also Emerson v. White,* 29 N.H. 482 (1854); *Bowman v. Redding & Co.,* 449 F.2d 956 (D.C. Cir., 1971); *du Pont de bie v. Vredenburgh,* 490 F.2d 1057 (4th Cir., 1974). This evidence may be only circumstantial in nature to be adequate to rebut the presumption of life. *Smith v. Knowlton, supra* at 197. Applying this presumption of life to the facts, no evidence appears prior to October 24, 1976 to indicate that Mr. Dustin had drowned. This court must accept, in the absence of any other proof, the date of death of Mr. Dustin to be October 24, 1976 at the earliest.

The statute of limitations of RSA 556:11 would be begun from that date. In construing the statute, we are guided by New Hampshire's rules of statutory construction. RSA 21:1 requires that in construing *all* statutes, the rules of Chapter 21 are to be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute. RSA 21:8 defines a year to mean a calendar year. RSA 21:35 provides that when time is to be reckoned from a date, the date when the act is done shall not be included in the computation.

Guided by these rules, the statute of limitations which is to be reckoned from the death of the deceased party (October 24, 1976), would begin tolling, *not* on October 24, 1976, but on October 25, 1976. Counting two calendar years from October 25, 1976 would place the end of the two years on October 24, 1978—and that is the date on which plaintiff's complaint was filed with the clerk's office.

The plaintiff was, therefore, within the statute of limitations. Defendant's motion to dismiss is denied.