Purnell v. Shoreway Acres Resort      CV-96-251-SD  03/10/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Anne Purnell

    v.                                Civil No. 96-251-SD

Shoreway Acres Resort, Inc.;
Terence L. Dineen


O R D E R


In this diversity action, plaintiff Anne Purnell seeks relief against defendants Shoreway Acres Resort, Inc. (Shoreway) and its owner, Terence Dineen, for injuries plaintiff sustained while a guest at Shoreway.  Currently before the court is defendants' motion to dismiss for lack of personal jurisdiction or, alternatively, for improper venue.  Plaintiff objects.


Background

Purnell, a resident of New Hampshire, is a member of a senior citizen social group called the "Newport Seniors."  In 1995 the group had planned several trips for the year, including a trip to Cape Cod, Massachusetts.

The Cape Cod trip was organized and arranged by Tye's Top Tour and Travel Agency (Tye's), a New Hampshire travel agency which had been arranging trips for the Newport Seniors for

approximately four years.  Affidavit of Patricia L. Murphy (Attachment #2 to Plaintiff's Objection).  The travel agency booked accommodations for the group at the Shoreway Resort in Massachusetts.  Tye's and Shoreway had maintained an ongoing working relationship for approximately four years, during which time Tye's received quotes and directly booked tours for New Hampshire groups by telephone, fax, etc. Id.

In the process of arranging the accommodations for the Newport Seniors' trip, Tye's made direct contact with Shoreway, which included telephone calls discussing availability and price negotiations.  Shoreway and Tye's also exchanged quotes and account sheets via fax. Id.  The final plan called for the group to arrive at Shoreway on September 13, 1995.

On September 14, 1995, plaintiff, while a registered guest of Shoreway, slipped on a slippery porch and broke her hip.  She now seeks to recover damages from defendants.

## Discussion

### 1.  Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

#### a.  Standard of Review

When personal jurisdiction is contested, plaintiff bears the burden of demonstrating that jurisdiction over the defendant is

proper.  <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1995).

To meet this burden, plaintiff must make a prima facie showing

that jurisdiction is appropriate by offering "evidence that, if

credited, is enough to support findings of all facts essential to

personal jurisdiction."  <u>Boit v. Gar-Tec Prods., Inc.</u>, 967 F.2d

671, 675 (1st Cir. 1992).[1]  "[T]he plaintiff ordinarily cannot

rest upon the pleadings, but is obliged to adduce evidence of

specific facts," which are set forth in the record.  <u>Foster-

Miller</u>, <u>supra</u> note 1, 46 F.3d at 145.  However, "a [p]laintiff's

written allegations of jurisdictional facts are construed in

[its] favor," <u>Kowalski v. Doherty, Wallace, Pillsbury & Murphy</u>,

787 F.2d 7, 9 (1st Cir. 1986), and the court "must accept the

plaintiff's (properly documented) evidentiary proffers as true,"

<u>Foster-Miller</u>, <u>supra</u> note 1, 46 F.3d at 145; <u>accord</u> <u>Ticketmaster-

New York, Inc. v. Alioto</u>, 26 F.3d 201, 203 (1st Cir. 1994).

        b.  <u>The New Hampshire Long-Arm Statute</u>

    The New Hampshire long-arm statute applicable to individual

defendants is New Hampshire Revised Statutes Annotated (RSA)

510:4, I (Supp. 1995), which reads:

_____

    [1]In some circumstances, the court may go beyond the prima
facie standard and require an evidentiary hearing.  <u>See</u> <u>Boit</u>,
<u>supra</u>, 967 F.2d at 676; <u>Foster-Miller, Inc. v. Babcock & Wilcox
Canada</u>, 46 F.3d 138, 146 (1st Cir. 1995).

3

> Any person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state submits himself, or his personal representative, to the jurisdiction of the courts of the state as to any cause of action arising from or growing out of the acts enumerated above.

This statute has been interpreted "to afford jurisdiction over foreign defendants 'to the full extent that the statutory language and due process will allow.'" Sawtelle, supra, 70 F.3d at 1388 (citing Phelps v. Kingston, 130 N.H. 166, 171, 536 A.2d 740 (1987)). When a state's long-arm statute is coextensive with the outer limits of due process, the issue then collapses into whether the exercise of personal jurisdiction satisfies the constitutional requirements of due process. Sawtelle, supra, 70 F.3d at 1388.

A similar conclusion is reached with respect to New Hampshire's authority to exercise jurisdiction over an out-of-state corporation. New Hampshire's corporate long-arm statute, RSA 293-A:15.10, has been interpreted "to authorize jurisdiction over foreign corporations to the full extent allowed by federal law." McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994). Accordingly, the personal jurisdiction inquiry collapses into "the single question of whether the constitutional requirements of due process have been met." Pelchat v. Sterilite

4

Corp., 931 F. Supp. 939, 944 (D.N.H. 1996) (citing Sawtelle, supra, 70 F.3d at 1388).

c. Due Process

In order for personal jurisdiction to comport with the Due Process Clause of the Fourteenth Amendment, certain "minimum contacts" must exist between the defendant and the forum state. International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945); accord Ticketmaster, supra, 26 F.3d at 206. The First Circuit employs a three-part analysis to determine whether a defendant's contacts are sufficient to permit the exercise of specific personal jurisdiction:[2] (1) the claim must be related to the defendant's forum state activities; (2) the defendant must purposely avail itself of the privilege of conducting business in the state, thereby "invoking the benefits and protections of that state's laws" such that "the defendant's involuntary presence before the state's courts [is] foreseeable;" and (3) "exercise of

[2]There are two different avenues by which a court may arrive at personal jurisdiction--general and specific jurisdiction. "'General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.'" Foster-Miller, supra, 46 F.3d at 144 (quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)). While plaintiff discusses general jurisdiction, the focus of her assertion was specific jurisdiction. Therefore, the court's analysis will be limited to specific jurisdiction.

jurisdiction must . . . be reasonable." <u>United Elec. Workers</u>, <u>supra</u>, 960 F.2d at 1089; <u>accord</u> <u>Sawtelle</u>, <u>supra</u>, 70 F.3d at 1388.

### (1) Relatedness

The first prong of the analysis is whether the plaintiff's claim arises out of, or relates to, defendants' activities in New Hampshire. <u>Id.</u> (citing <u>Ticketmaster</u>, <u>supra</u>, 26 F.3d at 206). "The relatedness requirement is not met merely because a plaintiff's cause of action arose out of a general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." <u>Fournier v. Best Western Treasure Island Resort</u>, 962 F.2d 126, 127 (1st Cir. 1992). Specifically, it focuses on "the nexus between [the] plaintiff's claim and the defendant's contacts with the forum." <u>Ticketmaster</u>, <u>supra</u>, 26 F.3d at 206.

The defendants' contacts with New Hampshire involved an exchange of materials with Tye's, a New Hampshire business, to host a trip for the Newport Seniors. Specifically, defendants contacted Tye's through the mail, telephone, and facsimile transmissions. The First Circuit has noted that "[t]he transmission of information into New Hampshire by way of telephone or mail is unquestionably a contact for purposes of our analysis." <u>Sawtelle</u>, <u>supra</u>, 70 F.3d at 1389-90. However, the

6

defendants' contacts must somehow be "related" to the plaintiff's injury in order to satisfy the first prong of the specific jurisdiction analysis.

The court finds that the defendants' contacts with New Hampshire had a sufficient nexus to plaintiff's subsequent harm in Massachusetts such that the two can be deemed "related." As support for this conclusion, the court turns to a recent First Circuit case which dealt with this precise issue, Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 713-16 (1st Cir. 1996). In Nowak, a Massachusetts resident drowned in a Hong Kong hotel and then brought a wrongful death diversity action in the United States District Court for the District of Massachusetts. The court found that when a foreign corporation directly targets residents in an effort to forge a business relationship, the necessary "relatedness" could exist when the resident is subsequently harmed while engaged in activities "integral to the relationship the corporation sought to establish." Id. at 715.

Where, as here, a defendant directly targets residents in an ongoing effort to further a business relationship and achieves its purpose, it is reasonable to conclude that its contacts with the forum are "related" to the tortious result. See id. at 715. As the "relatedness" prong has been met, the court proceeds to the "purposeful availment" requirement.

7

### (2) Purposeful Availment

"The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle, supra, 70 F.3d at 1391 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). The focus of this requirement is whether the defendant has "engaged in any purposeful activity related to [New Hampshire] that would make the exercise of jurisdiction fair, just, or reasonable." Id. (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)). Specifically, the two focal points of purposeful availment are voluntariness and foreseeability. Nowak, supra, 94 F.3d at 716 (citing Ticketmaster, supra, 26 F.3d at 207).

To be considered voluntary, the contacts with New Hampshire must not be "based on the unilateral actions of another party or third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1984). Rather, the contacts must "amount[] to a purposeful decision by the nonresident to 'participate' in the local economy." Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 934 (1st Cir. 1985).

In this instance, there is at least minimal activity by Shoreway which indicates a decision on its part to make itself available to the New Hampshire traveling public. Shoreway's

actions of sending bids and quotes to Tye's for the Newport Seniors' tour package indicates that Shoreway voluntarily contacted New Hampshire to solicit New Hampshire residents to stay at Shoreway Acres. See Nowak, supra, 94 F.3d at 717 (finding Hong Kong defendant's correspondence with plaintiff's husband's employer to be a voluntary contact with Massachusetts).

As for foreseeability, the defendants' contacts with New Hampshire must be such that they should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). In other words, it must be foreseeable that the defendants would be subject to suit in New Hampshire.

Defendants assert that soliciting New Hampshire residents through advertising with Tye's does not make it reasonably foreseeable that they would have to defend a suit in New Hampshire. Defendants' Memorandum at 5. In support of their assertion, they rely on Mulhern v. Holland America Cruises, 393 F. Supp. 1298, 1303 (D.N.H. 1975), which found that it was not foreseeable for a Dutch defendant cruise line to be subject to personal jurisdiction in New Hampshire for providing promotional brochures to New Hampshire travel agencies. While merely providing promotional and advertising materials to a travel agency may not give rise to foreseeability, this court finds that

9

Shoreway did much more in this case.

During their four-year "working" relationship with Tye's, Shoreway provided quotes and bids on specially designed tour packages for New Hampshire residents. Many of these bids resulted in bookings of New Hampshire residents at Shoreway Acres, thereby indicating that Shoreway has generated a financial interest in New Hampshire.

The First Circuit has found that when a defendant purposefully derives economic benefits from its forum state activities, exercising jurisdiction in that forum is appropriate. Pritzker v. Yari, 42 F.3d 53, 61-62 (1st Cir. 1994), cert. denied, ___ U.S. ___, 115 S. Ct. 1959 (1995).

### (3) Gestalt Factors

Personal jurisdiction may only be exercised if it comports with traditional notions of "fair play and substantial justice." International Shoe Co., supra, 326 U.S. at 320. Courts evaluate a series of factors, known as the gestalt factors, to ascertain whether it would be fair to subject a nonresident to a foreign tribunal. Burger King, supra, 471 U.S. at 477. These factors are as follows:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial

system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id.

### (a) Burden of Appearance for Defendant

It is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction.  Pritzker, supra, 42 F.3d at 64.  Therefore, for this particular factor, the defendant must show more than a hardship in litigating in a foreign jurisdiction.  It must demonstrate that "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way."  Id.  The court finds that the defendants, who will have to travel only approximately 100 miles, have not satisfied their burden here.

### (b) Interest in the Forum

While a forum's interest is diminished where the injury occurred outside the forum state, Sawtelle, supra, 70 F.3d at 1395, "[t]he purpose of [this] inquiry is not to compare the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum has an interest."  Foster-Miller, supra, 46 F.3d at 151.

Even though the plaintiff's injury occurred in

11

Massachusetts, significant events took place in New Hampshire, thereby giving New Hampshire an interest in adjudicating this dispute.  Specifically, Shoreway's continued contacts with Tye's directly resulted in the plaintiff's and the Newport Seniors group's staying at the hotel.  Cf. Nowak, supra, 94 F.3d at 719 (finding that Hong Kong corporation's solicitation of business in Massachusetts provided that state with "a strong interest in exercising jurisdiction even though the injury took place in Hong Kong").

Therefore, as New Hampshire has an interest in protecting its citizens from the unsafe services of out-of-state businesses who actively pursue New Hampshire markets, and further, in providing those citizens with a convenient forum to litigate their claims, the court finds that New Hampshire has a strong interest in exercising jurisdiction over Shoreway in this case.

### (c) Plaintiff's Convenience

The First Circuit has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to their convenience.  See Foster-Miller, supra, 46 F.3d at 151; Sawtelle, supra, 70 F.3d at 1395; Nowak, supra, 94 F.3d at 718.  Here, in view of plaintiff's age and physical infirmities, it would unquestionably be more convenient for

12

plaintiff Purnell to litigate her tort claim in New Hampshire.

### (d) Administration of Justice

This factor focuses on the judicial system's interest in obtaining the most effective resolution of the controversy. Defendants assert that this consideration would be best satisfied by litigating the case in Massachusetts, where most of their witnesses are located, while plaintiff asserts that most of her witnesses reside in New Hampshire. In viewing this factor, "the interest of the judicial system in the effective administration of justice does not appear to cut in either direction" here. See Ticketmaster, supra, 26 F.3d at 211.

### (e) Pertinent Policy Arguments

The final gestalt factor requires the court to consider the common interests of all sovereigns in promoting substantive social policies. New Hampshire has an interest in protecting its citizens from out-of-state providers of goods and services as well as affording its citizens a convenient forum in which to bring their claims. Both of these interests would be better served by exercising jurisdiction in New Hampshire. On the other hand, Massachusetts has an interest in protecting its tourism industry and businesses and in providing parties to a dispute

13

with a convenient forum.  Balancing the two forums' interests, the court finds that this final gestalt factor tips slightly more in plaintiff's favor.  See Nowak, supra, 94 F.3d at 719.

In sum, the gestalt factors weigh strongly in favor of jurisdiction in New Hampshire.  This finding, coupled with plaintiff's adequate showing on the relatedness and purposeful availment prongs of the constitutional test, lead to a finding that the exercise of jurisdiction in New Hampshire is reasonable and does not offend the notions of fair play and substantial justice.

## 2.  Defendants' Motion to Dismiss for Improper Venue

Defendants assert that New Hampshire is not a proper venue for this action.  The relevant section of Title 28 of the United States Code provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .

28 U.S.C. § 1391(a)(2).

"Under this section, there may be several districts that qualify for proper venue."  F.A.I. Electronics Corp. v. Chambers, 944 F. Supp. 77, 80 (D. Mass. 1996); accord VDI Technologies v. Price, 781 F. Supp. 85, 94 (D.N.H. 1991).  The determination of

14

proper venue is not a question of which district is the "best" venue; rather, it is a question of whether the plaintiff chose a district that has a substantial connection to the claim, regardless of whether or not other forums had greater contacts. Setco Enterprises v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994).

As discussed supra, the defendants had substantial contacts with New Hampshire through their involvement with Tye's and the economic benefit they derived from booking tour groups of New Hampshire citizens into their resort. It was these same contacts that led plaintiff to be at Shoreway, where she fell and broke her hip. Therefore, as applied to the case at bar, 28 U.S.C. § 1391(a)(2) renders New Hampshire a proper venue in which to litigate this action.


## Conclusion

For the foregoing reasons, the court denies defendants' motion to dismiss for lack of personal jurisdiction and improper venue (document 4).

SO ORDERED.


_____
Shane Devine, Senior Judge
United States District Court

March 10, 1997

15

cc:  David W. Hess, Esq.
     Robert J. Meagher, Esq.